THE STATE, THE TRUSTEES OF WHITE HOUSE SCHOOL DISTRICT, No. 71, RELATORS, v. THE TOWNSHIP COMMITTEE OF READINGTON TOWNSHIP, IN THE COUNTY OF HUNTERDON.

1. The legislature may create special taxing districts, defining their limits in its discretion; or designate certain occupations, trades or employments, as special subjects for taxation; or discriminate between different kinds of property in the rate of taxation; or may apportion the tax among the classes of persons or property made liable to taxation, in such manner as may seem fit. But when the taxing district has been defined, and the classes of persons, or kinds of property specially set apart for taxation, have been designated, the tax must be apportioned among those who are to bear the burden upon the rule of uniformity.

2. A tax upon the persons or property of A, B and C individually whether designated by name or in any other way, which is in excess of an equal apportionment among the persons or property of the class of persons or kind of property subject to the taxation, is, to the extent of such excess, the taking of private property for a public use without compensation.

3. The trustees of a school district were, by a special act of the legislature, authorized to complete a school-house for the district, and the township committee of the township in which the district was, were required to issue township bonds to meet the expenses of the improvement, and were authorized to provide for payment of such bonds by taxation on the estates of the inhabitants of the school district but

in assessing the first amount directed to be raised for that purpose, not exceeding $2000, the assessor was required to assess the amount so ordered in excess of $1000 only upon certain taxable inhabitants, who had not paid the assessment made against them the preceding year, for defraying the cost of said building. The amount of the taxes assessed in the former assessment against such individuals, and for which they were delinquent, was less than two hundred dollars. On application for a *mandamus* to the town committee to compel them to issue such bonds, the court denied the application on the ground that it was doubtful whether the means of indemnification provided could be made available by the imposition of a lawful tax under the provisions of the act.

## On application for a *mandamus*.

By an act of the legislature passed on the 14th of February, 1872, entitled, " An act for the purpose of raising money to construct and complete a public school building in District Number Eleven, of Readington township, Hunterdon county," after reciting that, " whereas, the trustees of school district No. 11, of Hunterdon county, have purchased a lot and partly erected thereon a public school building, which land and building when finished, and furniture necessary in said building, will cost about the sum of $6000 ; and whereas, an assessment of $1000 thereof was made on the taxable inhabitants of said school district for said purpose in the year 1871, which has been paid by said taxable inhabitants in part; but some of said inhabitants have not paid their assessment by reason of technical objections to the form of the proceedings by which the assessment was laid," it was enacted that the board of trustees of said district should be empowered to finish the erection and construction of said public school building, and to make certain improvements as appendages thereto, and to expend for that purpose a sum of money not exceeding $6000. By the same act the township committee of the township of Readington were required to execute and deliver to the trustees of the said school district, bonds in the name of the township of Readington, in the county of Hunterdon, to meet the expense of such improvement, which said bonds were to be of such denominations as the trustees of the

school district for the time being should direct, and were to become due and payable in installments as directed in the act.

By the third section of the act, the township committee were "authorized to provide for the payment of said bonds, and the interest thereon, as the same shall become due and payable, by taxation on the estates of the inhabitants of said school district No. 11, and on all the lands liable to be taxed therein, which taxes shall be assessed, levied and collected in the same manner, at the same time, and by the same means as other township taxes are; but in assessing the first amount, not exceeding $2000, the assessor of taxes for the said township, for the time being, shall assess the amount the town committee shall direct to be raised in excess of $1000 only upon those taxable inhabitants of said school district who have not paid their aforesaid assessment, made in the year 1871."

A supplement was passed on the 20th of March, 1872, correcting a clerical error in the original act, by substituting the words seventy-one for eleven, in the designation of the school district by number.

Argued at November Term, 1872, before Justices DAL-RIMPLE, DEPUE and VAN SYCKEL.

For the relator, *G. A. Allen.*

For the defendants, *J. N. Voorhees* and *A. Wurts.*

The opinion of the court was delivered by

DEPUE, J.　Application being made by the school trustees to the township committee for the issuing of bonds to the amount of $3500, under the act above recited, the township committee declined to issue the same, whereupon application was made to this court for a writ of *mandamus* to compel the committee to issue such bonds.

The amount of tax assessed in the school district for the building of a school-house in the year 1871 was $1000. Of this amount it appears by the depositions that $807 have been

collected. The residue is in litigation. The act directs that the first assessment upon the persons and property in the school district liable to taxation to provide the means of paying the bonds, shall not exceed $2000, and that in assessing the sum the township committee shall so direct to be raised, the amount in excess of $1000, shall be assessed only on those taxable inhabitants of the school district who have not paid the assessment made against them for the year 1871. Under this section the township committee are empowered to direct the assessment of the sum of $1000 upon certain individuals who are delinquents, whose delinquency in all is less than $200. It is insisted by the defendants' counsel that the mode of levying the tax contemplated by this act is not a legitimate method of taxation, and that therefore no adequate provision is made for the payment of the bonds of the township by taxation upon the school district.

The power of the legislature to validate the assessment of taxes which is liable to be avoided for mere irregularities in the proceedings in making the assessment, is well settled. *State* v. *Apgar*, 2 *Vroom* 358 ; *State* v. *Town of Union*, 4 *Ib.* 350. The act in question has none of the qualities of an act validating the proceedings in levying the former tax. It is the assumption by the legislature of the power to subject the delinquents to a penalty of $1000 for a delinquency of $200, in the discretion of the township committee. That this is the real import of the act is apparent. Indeed, the learned and astute counsel who argued this motion in behalf of the relators, so clearly discerned the exact import of this legislation that he was driven to maintain before the court that it was within the power of the legislature to select certain individuals as subjects of taxation, and impose upon them individually such burdens as the legislature saw fit, even to the extent of the payment of the state debt, or defraying the entire expenses of the state government.

The power of the legislature in the matter of taxation is said to be unlimited. Such undoubtedly is the theory of our government. But it is not every exaction made under color

of taxation that can be supported as the legitimate exercise of the sovereign power of taxation. It is of the very essence of taxation that it should be equal and uniform, and that where the burden is common there should be a common contribution to discharge it. *Cooley's Const. Law* 495. Not that it is essential to the validity of taxation that it should be levied according to rules of abstract justice. The legislature may create special taxing districts, defining their limits in its discretion, or designate certain occupations, trades or employments as special subjects for taxation ; or discriminate between differents kinds of property in the rate of taxation ; or may apportion the tax among the classes of persons or property made liable to taxation, in such manner as may seem fit. In this way inequalities in the share of the public burden, or even double taxation may arise without any relief except by appeal to the legislature. But when the taxing district has been defined, and the classes of persons or kind of property specially set apart for taxation have been designated, the tax must be apportioned among those who are to bear the burden upon the rule of uniformity. *Cooley's Const. Law, pp.* 493–513. Taxation operates upon a community, or a class in a community, according to some rule of apportionment. When the amount levied upon individuals is determined without regard to the amount or value exacted from any other individual or classes of individuals, the power exercised is not that of taxation but of eminent domain. *The People* v. *Mayor of Brooklyn,* 4 *Comstock* 420. A tax upon the persons or property of A, B and C individually, whether designated by name or in any other way, which is in excess of an equal apportionment among the persons or property of the class of persons or kind of property subject to the taxation, is, to the extent of such excess, the taking of private property for a public use without compensation. The process is one of confiscation and not of taxation.

But it is argued that the township committee may, in executing their duties under the act, so perform them as that no greater sum will be levied upon the delinquents, or their

property, than the amount of their unpaid tax, and that therefore a valid tax may be laid under the act. The argument may be sound. On that subject the court express no opinion. For present purposes it is sufficient that the act in question gives to the township committee the power arbitrarily to impose a sum in excess of such delinquency. Nor does it appear, except by the recital in the preamble of the act, that the refusal of the delinquents to pay the former assessment is based on mere irregularities in the mode of assessment. For aught that is shown, the legal objections to the collection of the tax assessed against them, are of such a nature as to be beyond the power of the legislature to remove.

The school district in question is one of the school districts in the township of Readington. The act does not impose upon the township the burden of erecting the school building. It contemplates that the cost shall ultimately be borne by the taxable inhabitants of the district, although the only means of reimbursement is by the taxation provided for.

The court should not award a *mandamus* to enforce this compulsory suretyship by the township for the debts of the school district, where any well grounded doubt exists whether the means of indemnification provided are such as can be made available. It is better to subject the school district to the inconvenience of a delay until further legislative action may be obtained, than to involve the township in a litigation to enforce the collection of a tax of doubtful constitutionality.

The application is denied, and rule to show cause discharged.

CITED in *State, McClosky, pros.,* v. *Chamberlin,* 8 *Vr.* 388; *State, Hoey, pros.,* v. *Collector, &c.,* 10 *Vr.* 75.